OPINION
{¶ 1} Plaintiff-appellant, John J. Kauza, appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, allowing a child support modification for defendant-appellee, Kimberly S. Kauza (Kimberly), making appellant's child support obligation retroactive, and imposing a parenting grid on the parties. We reverse the decision of the common pleas court in part and affirm the decision in part.
 {¶ 2} Appellant, an airline pilot, and Kimberly, a flight attendant, were married in 1992. *Page 2 
While they resided in Ohio, appellant flew out of Covington, Kentucky and Kimberly was based out of Washington, D.C.[1] After ten years of marriage, and two children, the parties filed for divorce in 2002. In 2004, the common pleas court formally adopted a Shared Parenting Plan (SPP), filed by the parties. Appellant and Kimberly were both designated in the SPP as the residential parents and legal custodians of their two minor children. The SPP also required appellant and Kimberly to forward their work schedules to each other in order to schedule parenting time with the children. When the parties were unable to reach an agreement on parenting time by the beginning of a particular month, the parenting time defaulted to a parenting grid which allocated the parenting time equally between appellant and Kimberly.
 {¶ 3} In its December 29, 2004 Decree of Divorce and Shared Parenting Decree, the common pleas court ordered appellant to pay $1,000 per month in spousal support for two years. In addition, appellant was ordered to pay $801.23 per month in child support.[2] The court, however, expressly provided for a modification of both the child support and the spousal support amounts, retroactive to December 1, 2004, because appellant's income was in danger of being drastically reduced by negotiations between his union and his employer.
 {¶ 4} On January 6, 2005, appellant moved to modify his child support and spousal support obligations because of a reduction in his rate of pay. A week later, Kimberly also moved to modify the amount of child support. The magistrate lowered appellant's child support obligation to $598.93 per month, but did not reduce his spousal support obligation. *Page 3 
The magistrate increased Kimberly's monthly child support obligation to $500 per month, and deducted her monthly commuting expenses of $591.50.[3] Upon review, the common pleas court found appellant's income had been computed incorrectly, and as a result reduced his child support obligation to $438.16 and his spousal support obligation to $765. In addition, the court stated that Kimberly's commuting expenses should not have been deducted from her income.
 {¶ 5} A few months later, Kimberly filed another motion to modify both spousal and child support. Appellant countered with a motion for contempt for Kimberly's failure to follow the scheduling provisions of the SPP. On March 14, 2006, the common pleas court adopted the magistrate's decision denying Kimberly's modification request and finding her in contempt for failure to abide by the scheduling provisions of the SPP.
 {¶ 6} On February 12, 2007, Kimberly again moved to modify child support and to modify the parenting schedule. The parties were then ordered to mediation on March 13, 2007. On October 23, 2007, the magistrate issued a decision which reduced Kimberly's child support obligation to zero. Appellant's child support obligation was increased to $933.72 per month with an effective date of February 12, 2007. The magistrate also instituted mandatory use of the parenting grid. Both parties filed objections to the decision. The common pleas court agreed with the magistrate and found that a change in circumstances warranted reducing Kimberly's obligation, the retroactivity of appellant's child support obligation was "appropriate and in accordance with the law," and that imposition of the parenting grid was proper. Appellant filed an appeal raising three assignments of error.
 {¶ 7} Assignment of Error No. 1: *Page 4 
 {¶ 8} "THE TRIAL COURT ERRED IN GRANTING KIMBERLY A DEVIATION IN HER CHILD SUPPORT OBLIGATION DOWN TO ZERO."
 {¶ 9} In his first assignment of error, appellant argues that there was not a substantial change in circumstances, which is required before a court may modify a child support obligation, and that the common pleas court incorrectly relied on erroneous information when it ordered the deviation in Kimberly's child support obligation. We agree with appellant.
 {¶ 10} "The purpose of the child support system is to protect the child and his best interest." Richardson v. Ballard (1996),113 Ohio App.3d 552, 555. "Whether a prior order for child support should be modified is within the sound discretion of the trial court, and its decision in that regard may be reversed on appeal only for an abuse of that discretion." Woloch v. Foster (1994), 98 Ohio App.3d 806, 810. A trial court abuses its discretion when it makes an unreasonable, arbitrary, or unconscionable decision. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} "In order to justify the modification of an existing support order, the moving party must demonstrate a substantial change of circumstances which `render[s] unreasonable an order which once was reasonable.'" Carson v. Carson (1989), 62 Ohio App.3d 670, 673, quotingBright v. Collins (1982), 2 Ohio App.3d 421, 425. A substantial change in circumstances occurs where a court recalculates the actual annual obligation required pursuant to the schedule and worksheet and the resulting amount is ten percent greater or less than the existing actual annual child support obligation. R.C. 3119.79(A).[4] *Page 5 
 {¶ 12} The common pleas court abused its discretion in finding there was a substantial change in circumstances pursuant to R.C. 3119.79(A). The last modification of Kimberly's child support obligation made her actual obligation $7,506.72 per year. When the magistrate recalculated Kimberly's support obligation on October 5, 2007, her actual annual obligation was $6,835.63, a difference of less than ten percent. Because the variation was less than ten percent greater or less than the existing support obligation, Kimberly was not entitled to a modification of her child support obligation. In ordering a modification the court abused its discretion by not following the statutory requirements of R.C. 3119.79(A).
 {¶ 13} "The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet * * * if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet * * * would be unjust or inappropriate and would not be in the best interest of the child. If it deviates, the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet * * * its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination." R.C. 3119.22. See, also, Marker v.Grimm (1992), 65 Ohio St.3d 139, 143.
 {¶ 14} Among the 16 statutory factors in R.C. 3119.23 are: income disparity between the parties, extended parenting time, and the child's standard of living. See R.C. 3119.23(D), (G), (L). The magistrate properly considered these particular factors in determining the deviation from Kimberly's child support obligation. The magistrate, however, improperly relied on incorrect commuting expenses and Kimberly's loss of spousal support when calculating the deviation. *Page 6 
 {¶ 15} There was an abuse of discretion when the common pleas court unreasonably relied on the magistrate's decision to take into account Kimberly's loss of $750 per month in spousal support when the court decided to make the deviation. Spousal support is taken into account when determining the income of the parties, not when determining whether a deviation should be allowed. See R.C. 3119.01(C)(7). Reliance on the loss of spousal support is misplaced, as it is not a factor listed in R.C. 3119.23, and its inclusion in the determination would be tantamount to giving Kimberly a double credit. The loss of Kimberly's spousal support was properly taken into account by its omission from her gross income, which in turn lowered her statutory support obligation. It should not have been relied upon by the common pleas court when it made its deviation determination.
 {¶ 16} The common pleas court also abused its discretion when it unreasonably relied on erroneous information regarding Kimberly's commuting expenses.[5] The magistrate's decision stated that Kimberly's costs for travel averaged "between $400 and $1,500monthly." (emphasis added) This is in direct conflict with the evidence in the record. Kimberly's affidavit of income expenses and financial disclosures, which she filed with her motion to modify is, clearly listed her monthly commuting expenses at $139.46. At the June 18, 2007 hearing, Kimberly stated that she had commuting expenses of $431.97 for May 2007 and $309.61 for June 1-15, 2007; while her total commuting expenses from January 1, 2007 to June 17, 2007 were only $1,459.07 (or approximately $265.27 per month). Furthermore, Kimberly's appellate brief also stated that her commuting expenses for the "first [five and a half] months of 2007 were just under $1,500." Thus, when the common pleas court adopted the *Page 7 
magistrate's decision, despite appellant's objections which directed the court to the proper amounts of Kimberly's commuting expenses, it committed an abuse of discretion. Appellant's first assignment of error is sustained.
 {¶ 17} Assignment of Error No. 2:
 {¶ 18} "THE TRIAL COURT ERRED IN SETTING THE EFFECTIVE DATE OF THE INCREASED CHILD SUPPORT AMOUNT RETROACTIVE BY NINE MONTHS."
 {¶ 19} In his second assignment of error, appellant contends that the common pleas court should not have made his newly increased child support obligation retroactive to February 12, 2007, the date Kimberly filed her modification motion. We find no merit to this argument.
 {¶ 20} "A court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered." R.C. 3119.84. "[Determining whether to make a modification retroactive is a matter within the discretion of the domestic relations court and cannot be reversed unless the trial court abuses its discretion." Hamilton v. Hamilton (1995),107 Ohio App.3d 132, 139, citing Murphy v. Murphy (1984),13 Ohio App.3d 388, 389. As noted previously, abuse of discretion is more than just an error of law or judgment, it suggests that a decision is unreasonable, arbitrary or unconscionable. Blakemore, 5 Ohio St.3d at 219. Application of an abuse of discretion standard, however, does not mean that an appellate court is free to substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 21} Because of the substantial time it takes to modify child support orders, a modification order should be retroactive to the date the motion was filed unless special circumstances dictate otherwise.Hamilton at 139-40, citing State ex rel. Draiss v. Draiss *Page 8 
(1990), 70 Ohio App.3d 418, 421; Murphy at 389. See, also, Gillem v.Gillem (Mar. 10, 1997), Clermont App. No. CA96-05-043, at 4. "Although * * * lengthy delays should be avoided, if possible, the delay does not in itself excuse * * * [an obligor] from paying child support. An increased financial burden does not [in itself] establish a `special circumstance.'" Quint v. Lomakoski, 173 Ohio App.3d 146, 2007-Ohio-4722, ¶ 50.
 {¶ 22} While it is regrettable that the decision on Kimberly's motion for modification was made eight and a half months after the motion was filed, we cannot say that the common pleas court abused its discretion by ordering the child support payments to be retroactive to the date of Kimberly's motion. The court was merely following the dictates of R.C. 3119.84, and the general rule that modification orders are retroactive. Its decision was not unreasonable or arbitrary, nor was it unconscionable.
 {¶ 23} Delays are an inevitable consequence of the legal system and cannot alone be used to justify deviating from retroactive application of a child support modification. Appellant argues that his child support obligation should not have been made retroactive because it was the common pleas court's decision to order mediation which resulted in the October 23, 2007 decision. The court did not order mediation as a dilatory tactic, nor did it spend an inordinate amount of time in rendering its decision. Therefore, because there was no abuse of discretion when the common pleas court ordered the child support modification retroactive to the filing of the motion to modify support, appellant's second assignment of error is overruled.
 {¶ 24} Assignment of Error No. 3:
 {¶ 25} "THE TRIAL COURT IMPOSED A GRID ON THE PARTIES PARENTING TIME, IN SPITE OF BOTH PARTIES' TESTIMONY THAT THEY NEED FLEXIBILITY."
 {¶ 26} In his final assignment of error, appellant argues that the common pleas court should not have imposed the default parenting grid in lieu of the provisions of the SPP which provided that the parties would work together to plan their parenting time schedule. We find *Page 9 
no merit to this argument.
 {¶ 27} "`Shared parenting' is the product of efforts to avoid the pain of loss inherent in the sole custody alternative, for both the parents and their child. It purports to continue, as nearly as possible, the joint parent and child relationships which exist in a marriage. Successful shared parenting requires at least two things. One is a strong commitment to cooperate. The other is a capacity to engage in the cooperation required." Meyer v. Anderson, Miami App. No. 01CA53, 2002-Ohio-2782, ¶ 25.
 {¶ 28} "Once a shared-parenting decree has [been] issued, R.C. 3109.04(E) governs modification of the decree * * *." Fisher v.Hasenjager, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 11. In particular, "R.C. 3109.04(E)(2)(b) * * * allows * * * for the modification of theterms of a shared-parenting plan." Id. at ¶ 27 (emphasis added). "The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. * * * The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children." R.C. 3109.04(E)(2)(b). See, also, Castanias v. Castanias, Warren App. No. CA2007-01-015, 2008-Ohio-2909, ¶ 18 (finding that because the common pleas court's decision was related to a modification of parenting time, the "court was required to consider only whether the proposed modification was in the children's best interest pursuant to R.C. 3109.04[E][2][b]").
 {¶ 29} Appellate review of a common pleas court's decision in a domestic relations case is governed by an abuse of discretion standard.Booth v. Booth (1989) 44 Ohio St.3d 142,144. Therefore, its judgment should not be disturbed unless the decision is unreasonable, arbitrary or unconscionable. Blakemore, 5 Ohio St.3d at 219.
 {¶ 30} Both appellant and Kimberly agreed to the scheduling provisions of the SPP *Page 10 
because "their work schedules [we]re complicated and thus, they agree[d] to be as flexible as necessary to accomplish an equal parenting schedule."[6] They also agreed in the SPP to "coordinate their work schedules to facilitate th[e] [p]lan," but their best efforts left much to be desired as appellant filed three motions for contempt and Kimberly filed one motion for contempt because of the parties' failure to follow the SPP. While neither party was particularly pleased with the default grid — Kimberly even testified that it was "horrible" — they resorted to it on more than one occasion because they could not agree to a particular schedule by the first of the month.
 {¶ 31} At the June 18, 2007 hearing, Kimberly testified that from January to April 2007, months in which they did not utilize the grid, she had on average four days less parenting days than appellant. She further stated that her children had also complained that they did not get to spend as much time with their mother, and that she was away from them more than she was with them. Because of the disparity in their schedules, Kimberly later testified that the grid was the only way to ensure that each party had an equal amount of parenting time. At the same hearing, appellant acknowledged that the grid did work, and that advanced notice of a parenting time schedule such as the grid would be better for both he and Kimberly so they would each know which trips they could fly in a given month.
 {¶ 32} The common pleas court felt the magistrate's decision to impose the grid was supported by the record. We find that the record indicates the modification was made in the best interest of the children, and that the decision was not unreasonable, arbitrary or unconscionable. Imposition of the grid grants appellant and Kimberly an equal amount of time with their children which allows both parents to foster, nurture and maintain their *Page 11 
relationship with their two children. Furthermore, the grid allows for more structure in the children's lives and better allows each parent to harmonize their work schedules and their parenting time in order to spend more quality time with their children. Although the grid is rigid, and neither parent has the traditional nine to five occupation, its use will provide better arrangement for both parents. In addition, using the grid may also facilitate better communication and a greater commitment to cooperate for the sake of the children. Because the common pleas court did not abuse its discretion in modifying the SPP and imposing the grid, appellant's third assignment of error is hereby overruled.
 {¶ 33} Judgment affirmed in part and reversed in part and remanded to the common pleas court for a new hearing on the motion to modify child support consistent with this court's decision and applying the correct figures in determining such support.
WALSH, P.J., and BRESSLER, J., concur.
[1] At a March 11, 2005 hearing, Kimberly testified that she spent approximately $600 per month commuting to Washington, D.C; however a financial affidavit filed by Kimberly on September 15, 2004 indicated that she had spent $1,355 per month in commuting expenses. Kimberly transferred from Washington, D.C. to Chicago on March 1, 2005 which reduced her commuting expenses to $874 per month pursuant to her financial affidavit filed on March 11, 2005. Kimberly's January 18, 2006 exhibits indicated her monthly commuting expenses in 2005 from Cincinnati to Chicago were $97.75.
[2] Appellant's statutory child support obligation was $1,209.23 per month, however, Kimberly's own support obligation of $400 plus $8 in processing — a deviation amount based on income disparity and parenting time-was offset against John's obligation.
[3] According to the schedule Kimberly was actually responsible for $7,506.72. However, the common pleas court gave her a $1,506.72 downward deviation which "was necessary and appropriate due to the disparity in the parties income and `in order to facilitate parenting time' with Mother."
[4] R.C. 3119.79(A) provides that "[i]f an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shallrecalculate the amount of support that would be required to be paidunder the child support order in accordance with the schedule and theapplicable worksheet through the line establishing the actual annualobligation. If that amount as recalculated is more than ten per centgreater than or more than ten per cent less than the amount of childsupport required to be paid pursuant to the existing child supportorder, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall beconsidered by the court as a change of circumstance substantial enoughto require a modification of the child support amount." (Emphasis added.)
[5] Recently in Bartlett v. Sobetsky, Clermont App. No. CA2007-07-085,2008-Ohio-4432, we held, that a trial court abused its direction where the court included a resident child adjustment when a previous order had specifically excluded the resident child. Id. at ¶ 13-16. In the case at bar, the common pleas specifically held that "commuting expenses should not have been deducted from Mother's income." While we note that the commuting expenses were not actually deducted from Kimberly's income by the magistrate, they were used as a rationale to deviate from her child support obligation.
[6] In an affidavit penned on December 17, 2002, appellant stated that his trips lasted anywhere from two to three days and he expected to fly about three or four trips per month. He further stated that Kimberly's trips were usually two to four days in length and she flew approximately four to six trips a month. *Page 1