OPINION
{¶ 1} Defendant-appellant, Steven R. Seng, appeals the decision of the Clermont County Domestic Relations Court to allocate parenting time between the parties in their divorce action. We affirm the decision of the trial court.
 {¶ 2} Appellant and plaintiff-appellee, Dorothy J. Seng (Dorothy), were married in 1995. A few years later, they had a son. By 2006, the marriage was over and both parties filed for divorce. During the divorce proceedings, the parties were ordered to mediation in *Page 2 
order to resolve the parenting of their child. The parties were able to reach an agreement during the mediation to share the parenting of their son. On August 24, 2006, the mediator sent both parties a Memorandum of Agreement with a Shared Parenting Plan. However, approximately a week later, at a pretrial/report on mediation hearing, the parties were no longer in agreement and the court ordered a parenting investigation to obtain recommendations and assessments with regard to the parenting of the child.
 {¶ 3} Appellant then made his first attempt to have the mediation agreement adopted by the court on October 12, 2006.[1] The trial court, however, declined to adopt the mediation agreement with the proposed shared parenting plan. By January 12, 2007, the parental investigation was completed and the recommendation by the investigator was that Dorothy should be designated both the residential parent and legal custodian of the child.
 {¶ 4} On November 14, 2007, the trial court issued its decision and designated Dorothy as the child's residential parent and legal custodian. The court cited to the factors in R.C. 3109.04 for its decision and determined that it was in the best interest of the child to place him with his mother. Specifically, the trial court noted that the parties were unable to cooperate and make decisions regarding the welfare of the child and Dorothy was better able to provide the child a structured home environment and deal with her son's educational and special needs. The trial court stated that its decision was ultimately based on the totality of the circumstances and its awareness of the child's age, past parental responsibilities assumed by each party, and the child's relationship with his mother and father. The trial court also considered the child's own wishes and concerns by conducting an interview with him, and the court took into account the findings of the parenting investigation report. *Page 3 
Appellant then filed an appeal raising two assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO ADOPT THE SETTLEMENT AGREEMENT REACHED IN MEDIATION."
 {¶ 7} In his first assignment of error, appellant argues that the trial court erred by failing to adopt and enforce the agreement the parties reached in mediation. We find no merit to appellant's argument.
 {¶ 8} "`The law favors the resolution of controversies and uncertainties through compromise and settlement rather than through litigation. * * * The resolution of controversies * * * by means of compromise and settlement * * * results in a saving of time for the parties, the lawyers, and the courts, and it is thus advantageous to judicial administration, and, in turn, to government as a whole.' To this we might add that courts today could not successfully cope with the volume of their dockets in the absence of settlement agreements."Spercel v. Sterling Industries, Inc. (1972), 31 Ohio St.2d 36, 38, quoting 15 American Jurisprudence 2d 938, Compromise and Settlement, Section 4. Thus, settlement and compromise are highly favored by the law. State ex rel. Wright v. Weyandt (1977), 50 Ohio St.2d 194, 197.
 {¶ 9} This court has stated that where a settlement agreement is voluntarily entered into in the presence of the trial court, and made a part of the record, it may not be repudiated by either party, and will be summarily enforced. Manne v. Cowan (Apr. 11, 1994), Clermont App. No. CA93-09-066 at 4-5, citing Ohio State Tie Timber v. Paris LumberCo. (1982), 8 Ohio App.3d 236, 239; Morform Tool Corp. v. KecoIndustries, Inc. (1971), 30 Ohio App.2d 207, 209. See, also,Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson,Inc., 74 Ohio St.3d 501, 502, 1996-Ohio-158; Spercel,31 Ohio St.2d at 38. *Page 4 
However, where an agreement has been reached outside of court, such as in mediation, the agreement can only be enforced by the trial court if the parties have entered into a binding contract.
 {¶ 10} However, a trial court is not bound by the results of a shared parenting agreement reached in mediation, as it is obligated by R.C. 3109.052(B) to consider the best interest of the child when allocating parental rights and responsibilities. Thus, the trial court has complete discretion as to whether to adopt a shared parenting plan. Haas v.Bauer, 156 Ohio App.3d 26, 2004-Ohio-437, ¶ 20, citing R.C. 3109.04(D)(1)(b); Masters v. Masters, 69 Ohio St.3d 83, 85,1994-Ohio-483. In matters of custody the judgment of a trial court is presumed correct and will not be disturbed absent an abuse of discretion. Haas at ¶ 20. Abuse of discretion is more than an error of law or judgment it implies that the trial court was unreasonable, arbitrary or unconscionable in making its decision. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} Appellant argues that Dorothy abandoned the shared parenting agreement that the parties reached in mediation and failed to provide the trial court with a basis for refusing to abide by its terms. Dorothy, in turn, argues that no valid agreement existed for the court to adopt, because appellant wanted to make changes to it almost immediately after the agreement was reached. We find, under these particular circumstances, that the existence or nonexistence of the agreement for shared parenting is irrelevant because the court ultimately found shared parenting was not in the best interests of the child. See Haas, 156 Ohio App.3d 26 at ¶ 21.
 {¶ 12} Therefore, we cannot say the trial court abused its discretion when it declined to adopt the shared parenting plan. The trial court made its decision pursuant to R.C. 3109.04(D)(1)(b) but most importantly, made its determination in the best interest of the child. Because the trial court was not unreasonable, arbitrary or unconscionable when it declined to *Page 5 
adopt the shared parenting agreement, appellant's first assignment of error is hereby overruled.
 {¶ 13} Assignment of Error No. 2:
 {¶ 14} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD SHARED PARENTING."
 {¶ 15} Appellant argues in his second assignment of error that the trial court erred by not awarding shared parenting to the parties in light of past demonstrations of cooperation and effective communications between them. We find no merit to this argument.
 {¶ 16} A trial court has broad discretion in determining how parental rights and responsibilities should be designated and its decision should not be reversed unless there is an abuse of discretion. Donovan v.Donovan (1996) 110 Ohio App.3d 615, 618, citing Masters,69 Ohio St.3d at 85. The trial court's judgment should not be disturbed unless its decision is unreasonable, arbitrary or unconscionable.Blakemore, 5 Ohio St.3d at 219. So long as there is competent and credible evidence in the record, to support the custody determination, the trial court's decision will stand because the court has had the best opportunity "to view the demeanor, attitude, and credibility of each witness," which may not easily translate to the written record.Davis v. Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260.
 {¶ 17} A trial court is required to allocate parental rights and responsibilities for minor children under R.C. 3109.04. The court is further guided by the statute when it chooses to designate one parent as the residential parent and/or legal custodian of a child, or whether the court instead delegates those responsibilities to both parents under a shared parenting plan. Arthur v. Arthur (1998), 130 Ohio App.3d 398,406. Of paramount concern in any custody determination is the requirement that the trial court's decision be made in the child's best interest. Glover v. Glover (1990) 66 Ohio App.3d724, 730, citingBirch v. Birch (1984), *Page 6 11 Ohio St.3d 85. R.C. 3109.04(F)(1) governs a court's determination of a child's best interest. A trial court is required to "consider all relevant factors," including those set forth in R.C. 3109.04(F)(1).[2]Sallee v. Sallee (2001) 142 Ohio App.3d 366, 370.
 {¶ 18} The record indicates that there was competent and credible evidence for the trial court to determine the best interests of the child. Both parents testified about their wishes for the care of their son. Dorothy desired to be the residential and custodial parent and appellant wanted to share the parenting of their son. The trial judge interviewed the child in camera in order to ascertain his wishes and concerns. The trial court was in possession of the parental investigation which contained interviews and observations regarding the child's interaction and interrelationship with members of his family. There was also testimony regarding this factor.
 {¶ 19} The trial court had school report cards and evaluations and heard testimony from the child's teacher and the court heard testimony about the child's behavior from the parental investigator, parents and aunt regarding his adjustments to home, school and the community. The parental investigation also contained information regarding the mental health of all of the parties involved. Additionally, the trial court heard testimony concerning *Page 7 
the parties' facilitation of parenting time with one another. Finally, the trial court had the findings of the independent investigator who prepared the parenting investigation for the court with her recommendations and concerns regarding the child's best interests. Therefore, the trial court considered all relevant factors to determine that the best interest of the child was to place him with his mother.
 {¶ 20} After the trial court determines the child's best interests, the court may then determine whether shared parenting is in the best interest of the child in accordance with the factors enumerated in R.C. 3109.04(F)(2). Pursuant to the statute, a trial court is required to consider all relevant factors, including in pertinent part: the parents' ability to cooperate and make decisions jointly; each parent's ability to encourage a loving and respectful relationship between the other parent and the child; any history of abuse or domestic violence by one or both parents; and the parents' geographic proximity of the parents to each other, as it relates to the practical considerations of shared parenting. See In re Marriage of Shore (1999), 135 Ohio App.3d 374, 390.
 {¶ 21} Recently we stated, "[s]hared parenting is the product of efforts to avoid the pain of loss inherent in the sole custody alternative, for both the parents and their child. It purports to continue, as nearly as possible, the joint parent and child relationships which exist in a marriage. Successful shared parenting requires at least two things. One is a strong commitment to cooperate. The other is a capacity to engage in the cooperation required."Kauza v. Kauza, Clermont App. No. CA08-02-014, 2008-Ohio-5668, ¶ 27, quoting Meyer v. Anderson, Miami App. No. 01CA53, 2002-Ohio-2782, ¶ 25 (internal quotations omitted). Numerous shared parenting cases have seemed to turn on the parents' ability to cooperate and communicate. See, e.g., Harkey v. Harkey, Lake App No. 2006-L-273, 2008-Ohio-1027;S.H. v. C.C., Madison App. No. CA2006-12-051, 2007-Ohio-4359;Wingard v. Wingard, Greene App. No. 2005-CA-09, 2005-Ohio-7066;Steven D.C. v. Carrie Anne P., Huron App. *Page 8 
Nos. H-04-029, H-04-023, 2005-Ohio-3858; Bechara v. Essad, Mahoning App. No. 03MA34, 2004-Ohio-3042. While no factor in R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting. See Rengan v. Rengan (June 29, 2001), Montgomery App. No. 18522, 2001 WL 726800 at *2.
 {¶ 22} There is competent credible evidence to support the trial court's determination that shared parenting would not be in the best interest of the child. The record is replete with evidence that appellant and Dorothy were unable to cooperate with each other, let alone communicate with one another, concerning the welfare of their child. We do note that there were some infrequent instances where the parties made joint decisions regarding their son's health. However, their failure to work with one another for the sake of their son's educational and special needs and his mental health suggests that shared parenting was not in the child's best interest. We also note there was other evidence in the record, including the depositions of the parties and their witnesses and the parenting investigation, which the trial court had available to it, when the court weighed the shared parenting factors and made its determination.
 {¶ 23} There was also evidence in the record to indicate that when the child left appellant's care he was disrespectful to his mother and other adults, which suggests that appellant failed to encourage a loving and respectful relationship between Dorothy and their son. There was also information within the record to indicate that there may have been some abuse and or domestic violence within the marriage which is also a factor the trial court could have considered.
 {¶ 24} In addition to the statutory factors, the trial court also considered the fact that Dorothy was better able to provide her son with a more structured home environment. The trial court also stated that Dorothy was more capable of dealing with her son's educational *Page 9 
and separate needs. The child's age and his relationship with each parent were also taken into account by the trial court as well the parental responsibilities that each party had assumed in the past, i.e., meeting with school teachers, taking the child to medical appointments, picking the child up from school, etc. Finally, as previously noted, the trial court spoke to the child to determine his wishes and concerns and had the benefit of a parental investigation report which detailed several of the statutory best interest factors as well as providing an assessment of the living arrangements, the parties' employment, and caretaking.
 {¶ 25} Therefore, we cannot say the trial court abused its discretion when it declined to order shared parenting and instead designated Dorothy as the residential and custodial parent. The trial court made its decision pursuant to the statutory factors within R.C. 3109.04(F), and other relevant factors as illustrated above. Because the trial court was not unreasonable, arbitrary or unconscionable when it determined that Dorothy be designated at the residential parent and legal custodian for her son, appellant's second assignment of error is hereby overruled.
 {¶ 26} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] Appellant also filed shared parenting plans in a Motion for Shared Parenting on June 18, 2007, a Motion to Enforce the Mediation Agreement on July 6, 2007, and Defendant's Proposed Shared Parenting Decree and Plan on October 15, 2007.
[2] {¶ a} The enumerated requirements listed in R.C. 3109.04 (F)(1) are:
{¶ b} "(a) The wishes of the child's parents regarding his care;
{¶ c} "(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;
{¶ d} "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
{¶ e} "(d) The child's adjustment to his home, school, and community;
{¶ f} "(e) The mental and physical health of all persons involved in the situation;
{¶ g} "(f) The parent more likely to honor and facilitate visitation * * *;
{¶ h} "(g) Whether either parent has failed to make all child support payments * * * that are required of that parent pursuant to a child support order * * *;
{¶ i} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
{¶ j} "(i) Whether the residential parent * * * has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
{¶ k} "(j) Whether either parent has established a residence, or is planning to establish a residence outside this state." *Page 1