[Cite as *In re A.M.*, 2023-Ohio-1523.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | | CASE NO. CA2022-12-092 |
| A.M., et al. | : | CA2022-12-093 |
| | : | O P I N I O N |
| | | 5/8/2023 |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2021JC05412

Christopher Bazeley, for appellant.

Sharon M. Schnelle, for appellee, Mother.

Andrew J. Helmes, for appellee, Uncle.

Mark J. Tekulve, Clermont County Prosecutor, Nicholas A. Horton, Assistant Prosecutor, for appellee, Clermont County Children Services.

Mary Armacost, guardian ad litem.

**M. POWELL, J.**

{¶ 1} Appellant, the maternal aunt ("Aunt") of Marc and Alfred, appeals a decision

of the Clermont County Court of Common Pleas, Juvenile Division, denying her motion for legal custody and granting permanent custody of the children to appellee, Clermont County Department of Job and Family Services, Children's Division (the "Agency").[1]

{¶ 2} Marc was born in May 2010; Alfred was born in August 2011. The children's mother and father are not parties to this appeal and were generally uninvolved in the proceedings below. Following a dependency case involving the mother and father, Marc and Alfred were placed in the custody of Aunt and her husband ("Uncle") in September 2012. Aunt contacted the Agency in 2018, stating she could no longer care for the children.

{¶ 3} On July 3, 2018, the Agency filed a complaint in the juvenile court alleging that the children were dependent. Marc and Alfred were adjudicated dependent and placed in the temporary custody of the Agency as disposition. The juvenile court appointed a guardian ad litem ("GAL") for the children. In August 2018, the children were placed in a foster home where they remained for the duration of the case. Temporary custody of the children was extended on July 18, 2019, and again on February 11, 2020.

{¶ 4} On August 27, 2019, Aunt filed a motion for legal custody of the children. On June 22, 2020, the Agency moved for permanent custody of the children. A hearing on the motions was held before a magistrate on October 2, 2020. The magistrate heard testimony from a caseworker of the Agency, Foster Mother, and Aunt. On January 27, 2021, the magistrate denied the Agency's motion for permanent custody and granted Aunt's motion for legal custody. The Agency and the GAL filed objections to the magistrate's decision. On March 22, 2021, the juvenile court sustained the objections, finding the magistrate improperly granted legal custody to Aunt without determining whether it was in the children's best interest. The juvenile court remanded the matter to the magistrate "for additional

---

1. "Alfred" and "Marc" are pseudonyms, adopted in the opinion for purposes of privacy and readability.

evidence to be taken as to whether granting legal custody to the maternal aunt is in the [children's] best interest."

{¶ 5} On remand, a hearing was held on May 21, 2021, and continued in progress to June 4, 2021. In the interim, it was discovered that Marc's disposition had not occurred within the statutory time frame. Consequently, on June 4, 2021, the juvenile court dismissed Marc's case, and the Agency filed a dependency complaint seeking permanent custody of Marc as the juvenile court's original dispositional order.[2] The juvenile court appointed the GAL for Marc. The June 4, 2021 custody hearing proceeded as scheduled, but concerned only Alfred. On July 8, 2021, Marc was adjudicated dependent. A dispositional hearing for Marc was held on August 27, 2021; the parties stipulated that the transcript of the October 2, 2020, May 21, 2021, and June 4, 2021 custody hearings and additional testimony concerning events since June 4, 2021, would serve as the evidence for purposes of disposition in Marc's case.

{¶ 6} On December 13, 2021, the magistrate issued two separate decisions, denying Aunt's motion for legal custody and granting the Agency permanent custody of the children.[3] As part of each of those decisions, the magistrate found that Marc and Alfred

2. On March 30, 2022, the Ohio Supreme Court held that if a juvenile court fails to hold a dispositional hearing within the 90-day limit set forth in former R.C. 2151.35(B)(1), (1) the juvenile court is required to dismiss the complaint after 90 days, even if no motion to dismiss was filed, (2) the juvenile court's failure to hold the dispositional hearing and dismiss the complaint does not divest the court of its subject-matter jurisdiction and its judgment granting temporary custody of the child to a children services agency is voidable, not void, and (3) on an appeal from a judgment granting permanent custody, res judicata bars a parent from challenging the juvenile court's jurisdiction based on the court's failure to have held a dispositional hearing on the issue of temporary custody within 90 days of the filing of an abuse, neglect, or dependency complaint. *In re K.K.,* Slip Opinion No. 2022-Ohio-3888, ¶ 9-10, 62. *See also In re R.B.*, 12th Dist. Butler Nos. CA2022-01-003 and CA2022-01-004, 2022-Ohio-1705 (overruling this court's holding in *In re K.K.*, 12th Dist. Butler Nos. CA2020-12-130, CA2021-01-002, and CA2021-01-003, 2021-Ohio-1689, that [1] a juvenile court is divested of subject-matter jurisdiction to proceed when the court does not hold the necessary dispositional hearing[s] within 90 days of the filing of a complaint alleging that a child is abused, neglected, or dependent as required by the now former R.C. 2151.35[B][1], and [2] the doctrine of res judicata does not apply in such circumstances).

3. In his decision regarding Marc, the magistrate noted that Aunt did not file a motion for legal custody in Marc's new case. Nevertheless, pursuant to Civ.R. 15(B) and because "issues relevant to [Aunt] seeking

- 3 -

had been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period.[4] Aunt filed objections to the magistrate's decisions, arguing that granting permanent custody of Marc and Alfred to the Agency and denying her motion for legal custody was against the manifest weight of the evidence and was not in the children's best interest.

{¶ 7} On December 7, 2022, the juvenile court overruled Aunt's objections and adopted the magistrate's decisions, thereby granting the Agency permanent custody of the children and denying Aunt's motion for legal custody. The juvenile court properly applied the two-part test set forth in R.C. 2151.414(B)(1) to the Agency's motion for permanent custody of Alfred, found that Alfred had been in the temporary custody of the Agency for at least 12 months of a consecutive 22-month period, and further found that it was in Alfred's best interest to grant permanent custody to the Agency. The juvenile court properly applied the two-prong test set forth in R.C. 2151.353(A)(4) to the Agency's request for permanent custody of Marc, found that Marc could not be placed with his mother or father within a

_____

custody of [Marc] were tried without objection at [Marc's] PC trial," the magistrate analyzed Marc's case as if Aunt had filed a new motion for legal custody. The parties do not challenge this ruling on appeal.

4. We note that the magistrate incorrectly applied R.C. 2151.414(B)(1) to the Agency's June 4, 2021 request for permanent custody of Marc and should have, instead, applied R.C. 2151.353(A)(4). An agency may obtain permanent custody of a child in two ways: (1) obtain temporary custody of the child and then file a motion for permanent custody under R.C. 2151.413, or (2) request permanent custody as part of its original abuse, dependency, or neglect complaint under R.C. 2151.353(A)(4). *In re A.D.*, 12th Dist. Clermont No. CA2021-11-060, 2022-Ohio-736, ¶ 18; *In re J.F.*, 8th Dist. Cuyahoga No. 105504, 2018-Ohio-96, ¶ 44. "The distinction is significant. While both statutes require the agency to show that permanent custody is in a child's best interest, the statutes contain different predicate circumstances." *In re B.S.*, 4th Dist. Pike No. 18CA890, 2018-Ohio-4645, ¶ 56. Because the Agency's June 4, 2021 dependency complaint requested the juvenile court grant it permanent custody of Marc as part of its initial disposition, R.C. 2151.353(A)(4) applied to the Agency's request for permanent custody. R.C. 2151.353(A)(4) does not allow a juvenile court to grant an agency permanent custody as the initial disposition, unless the court finds under R.C. 2151.414(E) that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. The so-called "12 of 22" provision is neither a predicate circumstance in R.C. 2151.353(A)(4) nor one of the factors set forth in R.C. 2151.414(E). The magistrate, therefore, erred in applying R.C. 2151.414(B)(1) and the "12 of 22" provision to the Agency's June 4, 2021 request for permanent custody of Marc. *In re A.D.* at ¶ 26. However, the juvenile court properly applied the correct two-prong test set forth in R.C. 2151.353(A)(4) to the Agency's June 4, 2021 request for permanent custody of Marc when it granted the Agency permanent custody of Marc.

- 4 -

reasonable time because both parents had demonstrated a lack of commitment toward Marc and had abandoned him, and further found that it was in Marc's best interest to grant permanent custody to the Agency. The juvenile court further found that it was not in the children's best interest to grant legal custody to Aunt.

{¶ 8} Aunt now appeals, raising four assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED WHEN IT ALLOWED THE BOYS' GAL TO SIMULTANEOUSLY ACT AS THEIR ATTORNEY WITHOUT EXPRESSLY APPOINTING HER TO DO SO.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE JUVENILE COURT AND THE GAL ERRED BY NOT APPOINTING A SEPARATE ATTORNEY TO REPRESENT THE BOYS AFTER IT REALIZED THAT [THEIR] INTERESTS DIVERGED FROM [THEIR] GAL'S.

{¶ 13} In her first assignment of error, Aunt argues that the juvenile court erred in allowing the GAL, a licensed attorney, to also act as the children's attorney without an express appointment from the court. In her second assignment of error, Aunt argues that the juvenile court erred by not appointing a separate counsel for the children. Aunt asserts that the GAL's recommendation that Marc and Alfred should be placed in the permanent custody of the Agency conflicted with the children's wishes and that the children's wishes were not adequately represented to the court. Throughout the proceedings below, the GAL's reports stated that the children wanted to live with Aunt. In support of her assignments of error, Aunt cites Sup.R. 48.03 and Juv.R. 4(C).

{¶ 14} Generally, when an attorney is appointed as guardian ad litem, as is the case here, "that attorney may also act as counsel for the child, absent a conflict of interest."

*In re L.W.*, 12th Dist. Warren Nos. CA2017-05-066 thru CA2017-05-069, 2017-Ohio-8433, ¶ 17. Thus, because a guardian ad litem is permitted to maintain dual roles in a custody dispute, "a court is not required to appoint separate counsel unless the [guardian ad litem's] recommendations regarding their best interest conflict with the children's wishes." *In re J.M.*, 12th Dist. Warren No. CA2008-12-148, 2009-Ohio-4824, ¶ 52, citing *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, ¶ 27. To determine whether such conflict exists, juvenile courts should make a case-by-case determination of whether a child needs independent counsel, which involves consideration of the maturity of the child. *In re L.W.* at ¶ 17. The appointment of independent counsel may be necessary when the child has consistently and repeatedly expressed a strong desire that differs and is otherwise inconsistent with the guardian ad litem's recommendations. *Id.* Because the roles of guardian ad litem and counsel are different, courts should not presume a dual appointment when the appointed guardian ad litem is also an attorney, absent a dual express appointment. *In re Borders*, 12th Dist. Brown No. CA2001-10-017, 2002-Ohio-2578, ¶ 23.

{¶ 15} Sup.R. 48.03 sets forth responsibilities for guardians ad litem and provides that "[u]pon becoming aware [his or her] recommendations differ from the wishes of the child," the guardian ad litem shall "immediately notify the court in writing with notice to the parties or affected agencies. The court shall take action as it deems necessary." Sup.R. 48.03(A)(5). We have held that the Superintendence Rules are "administrative directives only and are not intended to function as rules of practice and procedure," and that they are "purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants." *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 12. Courts have generally held that a guardian ad litem's failure to comply with Sup.R. 48 is not grounds for reversal of a custody determination. *See In re*

*Z.S.*, 4th Dist. Jackson Nos. 22CA12 and 22CA13, 2023-Ohio-688; *Short v. Rhodes*, 6th Dist. Wood No. WD-20-066, 2021-Ohio-1845; *In re M.S.*, 8th Dist. Cuyahoga Nos. 102127 and 102128, 2015-Ohio-1847. Juv.R. 4(C) provides that if a juvenile court "finds a conflict exists between the role of the Guardian ad Litem and the interest or wishes of the child, the court shall appoint counsel for the child[.]"

{¶ 16} During the proceedings below, Aunt failed to request that the juvenile court appoint an attorney to represent the children in the custody proceedings, failed to raise the issue of the GAL's alleged dual role without express appointment, and did not argue a conflict existed between the children's wishes and the recommendation of the GAL. An appellate court will not consider any error which the complaining party could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *In re Borders*, 2002-Ohio-2578 at ¶ 22. Such errors are forfeited and may not be raised on appeal except for plain error. *Id.*; *In re C.K.*, 12th Dist. Butler No. CA2008-12-303, 2009-Ohio-5638.

{¶ 17} Moreover, although Aunt filed objections to the magistrate's December 13, 2021 decisions, she did not specifically raise the issues she now raises in her first two assignments of error. Objections to a magistrate's decision must be "specific and state with particularity all grounds for objection." Juv.R. 40(D)(3)(b)(ii). The failure to file specific objections is treated the same as the failure to file any objections. *In re K.L.F.*, 12th Dist. Butler Nos. CA2020-08-083 and CA2020-08-084, 2021-Ohio-2290, ¶ 9. Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding as required by Juv.R. 40(D)(3)(b)." Accordingly, we review Aunt's first and second assignments of error only for plain error.

**{¶ 18}** "Plain error review is not favored in civil cases and is defined in such context as an error that 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *In re L.W.*, 2017-Ohio-8433 at ¶ 18, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, syllabus. Appellate courts will only recognize plain error in extremely rare cases with exceptional circumstances. *In re A.D.*, 12th Dist. Clermont No. CA2021-11-060, 2022-Ohio-736, ¶ 17.

**{¶ 19}** Upon thoroughly reviewing the record, we find no error, plain or otherwise. A guardian ad litem "shall perform whatever functions are necessary to protect the best interest of the child." R.C. 2151.281(I). The role of a guardian ad litem is to investigate the child's situation and then ask the juvenile court to do what is in the child's best interest, while the role of an attorney is to zealously represent his client within the bounds of the law. *In re S.H.*, 12th Dist. Butler Nos. CA2014-12-259 and CA2015-01-008, 2015-Ohio-1763, ¶ 35, citing *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985). The record shows that the GAL has known the children before she was appointed as their GAL in 2018, having worked with the children's siblings before 2018. The GAL's advocacy was clearly based upon her determination of what was in the children's best interest.

**{¶ 20}** Likewise, we find no error, plain or otherwise, in the juvenile court's failure to appoint a separate counsel for the children. The record indicates that the children's wishes to live with Aunt were inconsistent with the GAL's view of what was in their best interests— to grant permanent custody to the Agency. The record also plainly indicates that the magistrate and the juvenile court were aware of the children's wishes but deemed it unnecessary to appoint a separate counsel due to the age and immaturity of the children. A juvenile court need only consider a child's wishes regarding a motion for permanent

custody after giving due regard to the child's maturity. R.C. 2151.414(D)(1)(b). Similarly, "[t]here is no need to consider the appointment of counsel * * * because of a statement made by an immature child." *In re B.K.*, 12th Dist. Warren No. CA2006-03-011, 2006-Ohio-4424, ¶ 19. The record strongly suggests that the children may not possess the necessary maturity to provide a credible indication regarding their wishes as to custody. Although Marc and Alfred were 11 and 10 years old at the time of the last custody hearing in August 2021 and in the proper grade for their age, they both functioned below their grade level. Both children were diagnosed with ADHD and development delay at the time they were placed in foster care; Marc was also diagnosed with fetal alcohol syndrome and PTSD. Notwithstanding their continued progress, both children continue to have special needs, are in counseling, and participate in psychiatric services at Children's Hospital. Based upon the children's lower intellectual and emotional functioning, the juvenile court found that the children do not have the capacity to realize the impact that instability has had on their lives in the past.

{¶ 21} Aunt's first and second assignments of error are overruled.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE TRIAL COURT ABUSED ITS DISCRETION BY CONSTRUING THE JUDGE'S DECISION TO ALLOW THE STATE TO HAVE A "DO-OVER" OF THE OCTOBER 2, 2020 TRIAL.

{¶ 24} Following the October 2, 2020 custody hearing, the magistrate found that it was not in the best interest of the children to grant permanent custody to the Agency, denied the Agency's motion for permanent custody, and summarily granted Aunt's motion for legal custody. Upon ruling on the Agency's and the GAL's objections to the magistrate's decision, the juvenile court found that the magistrate improperly granted legal custody to Aunt without

determining whether it was in the children's best interest, and remanded the matter to the magistrate "for additional evidence to be taken as to whether granting legal custody to the maternal aunt is in the [children's] best interest."

{¶ 25} On remand, a hearing was held on May 21, 2021, and continued in progress on June 4, 2021. During those hearings, Aunt's counsel objected to the testimony of the GAL's witnesses, arguing that the remand hearings were not a "do-over" opportunity for the GAL and that any evidence predating the October 2, 2020 hearing was inadmissible. The magistrate advised the parties it would rule upon the objection in his decision and granted Aunt's counsel a standing objection. In his December 13, 2021 decisions, the magistrate overruled the objection on the basis of Juv.R. 40(D)(4)(d). The magistrate further found that given a trial court's inherent power to regulate court proceedings, the juvenile court "had the discretion to delegate its authority to take any additional evidence to the Magistrate, and that evidence may include evidence that could have been presented to the Magistrate at the first trial."

{¶ 26} On appeal, Aunt argues that the magistrate erred in interpreting the juvenile court's remand instruction to allow the Agency a "do-over" for the "poorly litigated first trial on October 2, 2020," thereby allowing the Agency and the GAL to present evidence that was available but not presented at the October 2, 2020 hearing. Although Aunt filed objections to the magistrate's December 13, 2021 decisions, she did not specifically object to the magistrate's interpretation of the juvenile court's remand instruction. She has, therefore, forfeited all but plain error on appeal. *In re A.D.*, 2022-Ohio-736 at ¶ 16.

{¶ 27} In support of its remand to the magistrate for additional evidence, the juvenile court cited Juv.R. 40(D)(4)(b) and (d). In ruling on objections to a magistrate's decision, Juv.R. 40 (D)(4)(d) requires a juvenile court to undertake an independent review of the

objected matters to determine whether the magistrate properly determined the factual issues and appropriately applied the law. A court "may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." Juv.R. 40 (D)(4)(b). Before ruling on objections, "the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." Juv.R. 40(D)(4)(d). The ultimate authority and responsibility over the magistrate's findings and rulings is vested with the trial court, and its independent analysis may result in a different conclusion than the one reached by the magistrate. *In re C.S.*, 12th Dist. Warren No. CA2015-05-041, 2015-Ohio-3937, ¶ 23.

{¶ 28} We find no error, plain or otherwise, in the manner the magistrate heard additional evidence following the juvenile court's remand. Contrary to Aunt's assertion, the May 21, 2021 and June 4, 2021 remand hearings were not a do-over. The case was not concluded until the juvenile court journalized a judgment entry on the ultimate issues of permanent custody and legal custody on December 7, 2022. Juv.R. 40(D)(4) allows a juvenile court to hear and take additional evidence when considering objections to a magistrate's decision.

{¶ 29} In remanding the matter to the magistrate, the juvenile court (1) underlined the fact the magistrate had granted legal custody to Aunt by default once he denied the Agency's motion for permanent custody, (2) emphasized its duty to consider the totality of the circumstances in determining the children's best interest, (3) noted the multiple lingering concerns regarding Aunt, including her long history of housing instability and her continued relationship with the abusive Uncle, (4) expressed its concern it was denied the full

opportunity to hear from the GAL as the latter had not testified at the October 2, 2020 hearing, and (5) stated that further evidence concerning the children's best interest "would prove beneficial to making an informed decision."  On remand, the record shows that the witnesses mostly testified about what had happened since the October 2, 2020 hearing; any testimony regarding pre-October 2, 2020 evidence was limited in nature and duration. All but one of the GAL's exhibits were excluded by the magistrate, including Foster Mother's letter cited in Aunt's brief.  Although the caseworker and Foster Mother testified in October 2020, their testimony in 2021 was not duplicative.  Furthermore, their testimony and that of the other witnesses was essential in providing the juvenile court with the evidence needed for the court to make an informed decision under the totality of the circumstances.

{¶ 30} Aunt's third assignment of error is overruled.

{¶ 31} Assignment of Error No. 4:

{¶ 32} THE DECISION OF THE JUVENILE COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 33} Aunt summarily argues that the juvenile court erred in denying her motion for legal custody of the children.  Aunt notes that the juvenile court considered her motion under R.C. 3109.04 and "expressly found" that the factors in R.C. 3109.04(F)(1)(a), (b), (e), and (f) "all fell in [her] favor."  Aunt then simply asserts, "While the trial court found that the remaining factors fell against [Aunt], the record, taken as a whole, demonstrate[s] that the children's best interests are served by a return of permanent custody to [Aunt]."  (sic).

{¶ 34} Aunt fails to offer any explanation, analysis, or citations to the record or to specific Ohio cases in support of her assertion.  App.R. 16 governs the contents of appellate briefs and requires that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review

- 12 -

and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). It is not an appellate court's duty to root out or develop an argument that can support an assigned error. *See In re C.P.,* 12th Dist. Brown No. CA2022-05-004, 2022-Ohio-3320. When an appellant fails to comply with the requirements of App.R. 16(A)(7), an appellate court may overrule or disregard an assignment of error for lack of briefing on the assigned error under App.R. 12(A)(2), and we have done so in the past. *In re C.S.*, 12th Dist. Butler Nos. CA2005-06-152 and CA2005-06-153, 2006-Ohio-5198 (declining to address assignment of error challenging the grant of legal custody to a nonparent due to appellant's failure to brief the assigned error). *See also In re Robinson*, 9th Dist. Summit No. 20826, 2002-Ohio-1504 (declining to address assignment of error challenging juvenile court's decision denying a motion for legal custody and granting agency's motion for permanent custody due to appellant's failure to brief the assigned error).

{¶ 35} Furthermore, even if Aunt had properly argued this assignment of error, we find the juvenile court did not abuse its discretion in denying Aunt's motion for legal custody. A juvenile court may award custody of an abused, neglected, or dependent child to a nonparent only "upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re K.M.*, 12th Dist. Butler No. CA2019-01-015, 2019-Ohio-1833, ¶ 37. In order to determine the best interest of a child in a legal custody proceeding, the juvenile court is required to consider all relevant factors listed under R.C. 3109.04(F). *Id.* at ¶ 38. Relatives seeking custody of a child are not afforded the same presumptive rights that a natural parent receives. *In re E.S.K.*, 12th Dist. Clermont No. CA2020-06-029, 2020-Ohio-5568, ¶ 59. An appellate court reviews a juvenile court's legal custody determination for an abuse of discretion. *In re K.M.* at ¶ 37.

{¶ 36} Upon thoroughly reviewing the record, and in light of Aunt's chronic history of housing instability, Aunt's questionable continued involvement with Uncle, a man who raped her and subjected her to domestic violence, Aunt's minimizing her interactions with Uncle, the children's amazing strides in regulating their former violent and destructive behaviors and their significant improvements in speech and occupational therapy since being placed with Foster Mother, and the fact the children are thriving together in their foster placement, we find the juvenile court did not abuse its discretion in finding that a grant of legal custody to Aunt would not be in the best interest of Marc and Alfred.

{¶ 37} Aunt's fourth assignment of error is overruled.

{¶ 38} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.